## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**URSULINES, L.L.C.**                                    **CIVIL ACTION**

**VERSUS**                                                       **NO:  14-2500**

**REGIONS BANK AND ABC**                        **SECTION: "S" (1)**
**INSURANCE COMPANY**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Regions Bank's Motion for Summary Judgment (Doc. #15) is **DENIED.**

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Regions Bank.  Regions argues this suit should be dismissed under the doctrine of res judicata because it is duplicative of plaintiff's prior suit against Regions regarding the same issues, which was dismissed with prejudice by this court, Ursulines, L.L.C. v. Regions Bank and ABC Insurance Company, Civil Action No. 12-2974 (E.D. La.) (Lemmon, J.).

In 2005, Ursulines sought to purchase vacant land in the Tremé neighborhood of New Orleans, Louisiana for the purpose of developing a condominium complex.  On July 8, 2005, Regions' predecessor in interest, AmSouth Bank, wrote to Cesar Burgos, Ursulines' representative, discussing the possibility of AmSouth's providing a construction loan to Ursulines, and outlining the terms and conditions of any such loan.  That correspondence stated that it was "for discussion purposes only" and that "[t]his letter is not to be construed as a commitment to lend, but as an expression of [AmSouth's] interest in providing the financing outlined above."  One of the terms of the proposal was the pre-sale of five of the condominium units.

On July 13, 2005, AmSouth issued a commitment letter to Burgos, in which it agreed to lend Ursulines $1,050,000 or 80% of the acceptable appraised value of the land or 75% of the contract price for the purchase of the land.  The commitment letter did not include discussion of the construction loan that was proposed in the July 8, 2005, communication.

On August 12, 2005, a certified appraiser valued the property at $1,400,000.  On August 15, 2005, Ursulines purchased the property for $1,400,000, and executed a loan agreement and a promissory note secured by a mortgage on the property in favor of AmSouth in the principal amount of $1,050,000.  Thereafter, Ursulines engaged an architect to design the condominium complex, and began to pre-sell the properties.  By August 29, 2005, Ursulines had pre-sold five units.

In February 2006, a certified appraiser reconfirmed that the value of the land was $1,400,000, and found that the value of the proposed improvements had a prospective market value of $7,600,000.

In May 2006, AmSouth merged with Regions, and Regions became the owner of the August 15, 2005, loan agreement and promissory note.  However, Regions would not offer Ursulines a construction loan conforming to the terms that AmSouth outlined in the July 8, 2005, proposal. Instead, Regions required Ursulines to pre-sell all of the units to obtain the construction loan.

Thereafter, Ursulines renewed the promissory note with Regions several times, each time extending its maturity date.  Ursulines alleges that it timely made all payments on the loan and reduced the principal balance while Regions held it.  Ursulines claims that it invested over $1,094,730 toward the project, and Regions' new requirements to obtain the construction loan rendered impossible the condominium construction project.

2

Ursulines alleges that in August 2009, it learned that the loan was placed in Regions' "'Special Assets' division, typically reserved for non-payment loan accounts," and was informed that Regions "wished for Ursulines to either move the loan or 'right-size' the loan." Ursulines also alleges that it "learned that Regions had conducted an appraisal of the Property in November 2008 and valued the property at: $575,000, which was 41% of the appraised value in August 2005." Ursulines claims that the November 2008 appraisal was incorrect because the property did not flood during Hurricane Katrina or Hurricane Rita and was adjacent to the French Quarter, and that Regions would not provide Ursulines with a copy of the appraisal.

Ursulines alleges that Regions then became "unyielding in its refusal to extend the maturity date of the loan beyond September 25, 2009," and Ursulines "was thus forced to seek assistance from another lending institution before discharging the loan, and also incur additional refinancing costs."

Ursulines sought to refinance the loan with First NBC Bank.  First NBC conducted an appraisal of the land on September 15, 2009, and found its value to be $1,215,000, which was 86% of the August 2005 appraisal value. However, First NBC would refinance only 70% of the appraised value, which was $789,750.  Thus, Regions retained the remaining $218,224 of the mortgage note, "and Ursulines was told to move the note or Regions would move forward with defaulting Ursulines and its guarantors on its mortgage note."  Ursulines alleges that it:

> was forced to abandon the condominium construction project and due to Regions['] ardent pursuit of defaulting Ursulines on the property[,] on May 18, 2010[,] had to sacrifice the project and the valuation of the construction, even recognized by Regions, and sell the Property to a third party purchaser for one million two-hundred and fourteen thousand dollars ($1,214,000.00) at a great loss to Ursulines, between interest payments, principal payments, architecture fees, and loss of

business opportunity in excess of three million eight hundred thousand dollars ($3,800,000.00).

Ursulines alleges that Regions is liable for breach of contract, bad faith, error, detrimental reliance, unjust enrichment, loss of business opportunity and unfair trade practices due to its actions regarding the parties' business relationship stemming from the August 15, 2005, loan agreement and promissory note and any renewals thereof.

In 2012, Ursulines filed a lawsuit against Regions. Ursulines, L.L.C. v. Regions Bank and ABC Ins. Co., Civil Action No. 12-2974, (E.D. La.). In that action, Ursulines alleged that Regions damaged Ursulines by failing to offer Ursulines a construction loan that conformed to the terms proposed by AmSouth in July 2005. Specifically, Ursulines alleged that:

> Thereafter, on August 15, 2005, AmSouth approved a commercial development loan in the amount of four million and eight hundred thousand dollars ($4,800,000.00). Of this loan, one million and four hundred thousand dollars ($1,400,000.00) would become available immediately for the purchase of the land property. The remaining funds, three million and four hundred thousand ($3,400,000.00), for the construction of the condominium complex, would be available as a line of credit and required that five (5) units be presold prior to commencing disbursement of the funds.

Ursulines alleged that, as a result of Regions' failure to lend, it was forced to abandon the condominium project and lost profits and pre-paid out-of-pocket expenses. Ursulines contended that Regions is liable to it under the theories of breach of contract, fraud, detrimental reliance and unjust enrichment.

In Civil Action No. 12-2974, Regions filed a motion to dismiss, or alternatively, motion for summary judgment, arguing that Ursulines could not maintain a cause of action against it for failure to lend money to Ursulines because there was never a credit agreement that meets the requirements of Louisiana law. In support of its motion, Regions attached the affidavit of its Assistant Vice

President, John W. "Casey" Thornton, Jr. Thornton attested that he maintains the pertinent records at the bank, and there was no credit agreement for the construction loan, only the July 8, 2005, proposal that specifically states that it is not a commitment to lend.

Ursulines argued that its claims were not entirely about the proposed construction loan, but rather that Regions' inducement of Ursulines to enter into the loan to purchase the property, and its detrimental reliance on Regions' representations regarding the construction loan. Ursulines also argued that whether Regions acted fraudulently during the parties' business relationship is a fact question that could not be determined on summary judgment.

This court granted Regions' motion, finding that Ursulines could not maintain an action against Regions under Louisiana law regarding Regions' alleged oral agreement to enter into the construction loan with Ursulines. Specifically, the court applied Louisiana Revised Statutes § 6:1122, which provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets the relevant terms and conditions, and is signed by the creditor and the debtor," and held that the lack of a writing was dispositive. As a result, this court dismissed with prejudice, Ursulines' complaint in Civil Action No. 12-2974 in which Ursulines sought to bring claims against Regions regarding Regions' alleged oral agreement to extend the construction loan to Ursulines.

On October 30, 2014, Ursulines filed the current lawsuit, Civil Action No. 14-2500. This time, Ursulines claims that Regions is liable to it because Regions acted in bad faith with respect to the administration of the August 15, 2005, land loan agreement and promissory note and any renewals thereof. Regions filed a motion for summary judgment arguing that this court's dismissal of Ursulines' prior suit bars this action under the doctrine of res judicata. Regions points out that

5

the complaints are nearly identical, and Ursulines could, and should, have brought any claims

regarding the land loan in the first action.  Specifically, Regions argues that:

> [i]n light of the claims made in the pleadings, there can be no doubt
> that the complaint in the case at bar arose out of the same
> transactions, the same 'common nucleus of operative facts' as did the
> First Lawsuit.  The same parties, the same loan transaction, the same
> claim that a second transaction was intended, the same allegations as
> to damages caused.

Regions also argues that Ursulines asserted claims related to the first loan in the first lawsuit.

Specifically, in opposition to Regions' motion to dismiss, or alternatively motion for summary

judgment, filed in the first lawsuit, Ursulines argued:

> First, a credit agreement for $1,050,000.00 for the purchase of
> property on which Ursulines was to construct a building and dated
> August 15, 2005. The second is the related to the agreement, and
> terms related thereto, for Regions' release of funds related to the
> construction of the building Ursulines sought to construct. Regions'
> entire defense centers on the second agreement. However, this case
> is not only about the second agreement. It is about AmSouth, Regions
> predecessor, and Regions inducement of Ursulines to enter into the
> August 15, 2005 agreement, Ursulines detrimental reliance related
> thereto, and Regions subsequent bad faith, negligent
> misrepresentation and fraud toward Ursulines related not only to its
> assessment of the August 15, 2005 loan agreement, but as to the
> entire project that the loan agreement(s) formed a part of. Regions
> breach, Ursulines damages, and Regions liability thereto cannot only
> be pinpointed on the "construction" credit agreement as Regions
> wishes for the Court to believe, but to Regions entire fraudulent and
> misrepresenting course of conduct throughout Ursulines and Regions
> business relationship. No one denies the existence of the August 15,
> 2005 loan agreement or Regions fiduciary relationship to Ursulines.
> Same is undisputed and statutorily undeniable.

Further, Regions argues that Ursulines' motion to file an amended complaint in the first action was

only to assert a jury demand, which was untimely.

Ursulines argues its first lawsuit against Regions, Civil Action No. 12-2974, concerned only the alleged oral contract between Regions and Ursulines regarding the alleged construction loan, whereas this suit, Civil Action No. 14-2500, concerns only Regions' actions regarding the administration of the August 15, 2005, loan agreement and promissory note and any renewals thereof.  Ursulines argues that the court's dismissal of Civil Action No. 12-2974 focused on the alleged oral contract, and that Regions should have raised issues regarding the August 15, 2005, loan agreement and promissory note in the first lawsuit if it wanted to avoid future litigation regarding that loan. Ursulines contends that it should not be foreclosed from raising issues regarding Regions' actions regarding the administration of the August 15, 2005, loan agreement and promissory note and any renewals thereof.

## ANALYSIS

### A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing

substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## B.    Res Judicata

Regions argues that the doctrine of res judicata bars Ursulines from bringing this action.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Oreck Direct, LLC v. Dyson, Inc., 560 F.3d 398, 401 (5th Cir. 2009) (internal quotations and citations omitted). "Res judicata insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." Id.

When a federal court exercises diversity of citizenship subject matter jurisdiction in a case, such as in this case, the court must apply the law of the forum state in determining the preclusive effect of a prior judgment, unless the state's law is incompatible with federal interest. Am. Home Assurance Co. v. Chevron, USA, Inc., 400 F.3d 265, 271 n. 20 (5th Cir. 2005) (citing Smtek Int'l

Inc. v. Lockheed Martin Corp., 121 S.Ct. 1021, 1028 (2001)).  As recognized by the United States Court of Appeals for the Fifth Circuit in Frank C. Minville LLC v. Atl. Refining Co., 337 Fed. Appx. 429, 434 (5th Cir. 2009), "Louisiana courts 'have repeatedly confirmed that federal law is applicable to consideration of whether a federal court judgment has res judicata effect.'" (citing Jones ex rel. Jones v. GEO Group, Inc., 6 So.3d 1021, 1025 (La. Ct. App. 2009); Green v. Iberia Par. Sch. Bd., 945 So.2d 940, 943 (La. Ct. App. 2006)).

Under federal law, a judgment precludes future actions on the basis of res judicata when: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and, (4) the same claim or cause of action was involved in both actions. Frank C. Minville, 337 Fed. Appx. at 435 (citing Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 571 (5th Cir. 2005)). "[W]here the four elements of the res judicata test are met, we must also determine whether 'the previously unlitigated claim could or should have been brought in the earlier litigation." In re Paige, 610 F.3d 865, 870 (5th Cir. 2010) (quoting D-1 Enters., Inc. v. Commercial State Bank, 864 F.2d 36, 38 (5th  Cir. 1989)).

In determining whether two suits involve the same claim, the United States Court of Appeals for the Fifth Circuit has adopted the transactional test of the Restatement (Second) of Judgments. Matter of Southmark Corp., 163 F.3d 925, 934 (5th Cir. 1999), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2339, 144 L.Ed.2d 236 (1999). Under this test:

> (1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any

part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

Restatement (Second) of Judgements, § 24 (1982). In determining the scope of the relevant transaction:

"Transactions may be single despite different harms, substantive theories, measures or kinds of relief .... That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would call for different measures of liability or different kinds of relief."

Matter of Intelogic Trace, Inc., 200 F.3d 382, 386 n. 3 (5th Cir. 2000) (quoting Restatement (Second) of Judgments § 24, comment c. (1982)). "One major function of claim preclusion is to force a plaintiff to explore all the facts, develop all the theories, and demand all the remedies in the first suit." 18 Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 4408, at 185 (2002). It is therefore "clear" under the transactional test that "a mere change in legal theory does not create a new cause of action." Id. § 4407, at 179; see also 18 James W. Moore, Moore's Federal Practice § 131.21[3][a], at 131–43–44 (3rd ed. 2004) ("[A] claim is coterminous with a transaction or series of transactions, regardless of the number of different legal theories that may arise as a result of plaintiff's alleged damages .... The fact that plaintiff's counsel in the first action didn't happen to think of the theory advanced in the second action will also fail to avoid preclusion.").

10

It is undisputed that this lawsuit and Civil Action No. 12-2974 involve the same parties, and that Civil Action No. 12-2974 was concluded by a final judgment on the merits that was rendered by a court of competent jurisdiction. The parties dispute whether the actions involve the same claim or cause of action.

A review of the facts and claims asserted in this suit and Civil Action No. 12-2974 demonstrates that the fourth prong of the res judicata test is not satisfied because the actions do not involve the same claim or cause of action. The central claim of Civil Action No. 12-2974 was that Regions harmed Ursulines by failing to offer Ursulines a construction loan that conformed to the terms proposed by AmSouth in July 2005. The central claim of Civil Action No. 14-2500 is that Regions acted in bad faith in its administration of the August 15, 2005, loan agreement and promissory note and any renewals thereof. These claims are entirely different. The court's holding in its May 21, 2013, Order and Reasons dismissing Civil Action No. 12-2974 addressed only the application of the Louisiana Credit Agreement Statutes, which require that such agreements be in writing, to the alleged oral agreement. It did not address the merits of Ursulines' claims regarding Regions' actions concerning the administration of the August 15, 2005, loan agreement and promissory note and any renewals thereof. It is undisputed that the August 15, 2005, loan agreement and promissory note were in writing as required by La. Rev. Stat. § 6:1122, and applying that statute would not result in the dismissal of Ursulines' claims asserted in this lawsuit. Therefore, Uruslines' claims in this suit are not the same as those asserted in Civil Action No. 12-2974, and are not barred by the doctrine of res judicata. Thus, the court need not determine whether Ursulines should or could have brought the claims asserted in this suit in Civil Action No. 12-2974. Regions' motion for summary judgment is **DENIED**.

## CONCLUSION

**IT IS HEREBY ORDERED** that Regions Bank's Motion for Summary Judgment (Doc. #15) is **DENIED.**

New Orleans, Louisiana, this  <u>10th</u>  day of April, 2015.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**