## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**URSULINES, L.L.C.**                                          **CIVIL ACTION**

**VERSUS**                                                         **NO:  14-2500**

**REGIONS BANK AND ABC**                            **SECTION: "S" (1)**
**INSURANCE COMPANY**

### ORDER AND REASONS

Defendant, Regions Bank, appeals the United States Magistrate Judge's Order (Doc. #77) denying its motion to assess costs for complying with discovery requests under Louisiana Revised Statutes § 6:333(G) and to preserve its right to assert an evidentiary privilege under Louisiana Revised Statutes § 6:333(I)(2) (Doc. #63).  For the reasons explained herein, the ruling of the United States Magistrate Judge is **AFFIRMED**.

### BACKGROUND

This matter is before the court on Regions's appeal of the United States Magistrate Judge's April 28, 2016, Order and Reasons denying Regions's motion to assess costs for complying with discovery requests under Louisiana Revised Statutes § 6:333(G) and to preserve its right to assert an evidentiary privilege under Louisiana Revised Statutes § 6:333(I)(2) (Doc. #63).

In 2005, plaintiff, Ursulines, L.L.C., sought to purchase vacant land in the Tremé neighborhood of New Orleans, Louisiana for the purpose of developing a condominium complex. On August 15, 2005, Ursulines purchased the property for $1,400,000, and executed a loan agreement and a promissory note secured by a mortgage on the property in favor of Regions's predecessor in interest, AmSouth Bank, in the principal amount of $1,050,000.

In May 2006, AmSouth merged with Regions, and Regions became the owner of the August 15, 2005, loan agreement and promissory note.  Thereafter, Ursulines renewed the promissory note

with Regions several times, each time extending its maturity date.  Regions eventually refused to extend the maturity date beyond September 25, 2009.  Ursulines refinanced $789,750 of the loan's principal balance with First NBC Bank, and Regions retained the remaining $218,224.

On October 30, 2014, Ursulines filed this lawsuit alleging that Regions is liable to it because Regions acted in bad faith with respect to the administration of the August 15, 2005, land loan agreement and promissory note and any renewals thereof.  Particularly, Ursulines alleges that after Regions refused to extend the maturity date of the note beyond September 25, 2009, it was forced to sell the property and abandon the condominium project to pay off the loan.  Ursulines alleges that Regions is liable for breach of contract, bad faith, error, detrimental reliance, unjust enrichment, loss of business opportunity and unfair trade practices.

Ursulines served three sets of written discovery requests on Regions, which combined consisted of 26 interrogatories, 9 requests for production and 7 requests for admission.  Regions made the same general objections to each set of written discovery contending that: (1) Ursulines is not entitled to a response to the requested discovery to the extent that it seeks financial records covered by the requirements of La. Rev. Stat. § 6:333(C)[1] and (D); (2) pursuant to La. Rev. Stat. §

---

[1]  La. Rev. Stat. § 6:333(C) and (D) provide:

C.  A bank may disclose financial records pursuant to a disclosure demand if each of the following conditions are met:

   (1) The disclosure demand is served on the bank's president, one of the bank's registered agents for service of process, or, if applicable, on the bank's counsel of record unless such service on such individuals is expressly waived by the bank.

   (2) Prior to the return date, the person requesting the issuance of the disclosure demand furnishes the bank with an affidavit certifying both of the following:

6:333(G),[2] Ursulines is required to pay the reasonable fees and costs incurred by Regions in

---

      (a) That such disclosure demand, or a certified copy thereof, has also been personally served upon each customer named in the disclosure demand to whom the financial records being sought pertain or upon such customer's counsel of record in accordance with Subsection D of this Section.

      (b) That such service was made at least fifteen business days prior to the return date.

      (3) The bank has not received written notice that a customer to whom the financial records pertain has taken legal action to enjoin or otherwise restrain the release of the financial records.

D. Service of a disclosure demand, or certified copy thereof, on any customer shall be made by utilizing any applicable method for service of citation on said customer authorized by the Code of Civil Procedure, including Articles 1231 through 1265. However, any such service may be made by an individual who is not a party and who is at least eighteen years of age, rather than by the sheriff. Service on any customer's counsel of record shall be made by personal service in the office of such counsel of record on either his secretary, as defined in Code of Civil Procedure Article 1235(C), or any partner or office associate of such counsel of record. Service on a customer or on his counsel of record may be made within or without the state of Louisiana.

[2] La. Rev. Stat. § 6:333(G) provides:

G. A bank shall be given a reasonable period of time prior to the return date, and in no event less than fifteen business days prior thereto, in which to complete the action necessary to disclose financial records which are the subject of a request. Whether the bank is a party to litigation or not, prior to making any disclosure and notwithstanding any contrary provisions of this Section, R.S. 13:4521, Code of Civil Procedure Article 2411, or of any other law, the bank shall be reimbursed by the requesting person for the reasonable fees and costs incurred or to be incurred by the bank in the course of compliance with the request, including but not limited to document reproduction costs, research and processing costs, personnel costs, and travel expenses, whether any or all such costs are internal costs or are costs incurred by the bank in favor of a person acting on behalf of or performing services for the bank. If the bank and the requesting party disagree as to the amount of the fees and costs to be reimbursed to the bank under this Section, the bank need not produce the financial records, until the court or other appropriate body issuing the disclosure demand has fixed the amount to be paid to the bank upon a motion of any party or the bank. The court or other appropriate body, in its discretion, may order a contradictory hearing to fix the fees and costs to be reimbursed.

responding to the discovery requests; and, (3) all financial records prepared by or for the bank shall be confidential as required by La. Rev. Stat. § 6:333(I)(2).[3]

On December 2, 2015, counsel had a meet-and-confer conference to discuss their discovery disputes.  Thereafter, counsel exchanged correspondence and eventually agreed that they would respond to each other's written discovery requests by March 3, 2016, subject to Regions's objections to certain interrogatories.  On March 4, 2016, Regions's counsel emailed Ursulines's counsel stating that the documents were ready to be produced after Ursulines paid the attached bill of costs in the amount of $29,904.32.  Thereafter, Regions filed the motion to assess costs in which it sought an order requiring Ursulines to pay the discovery costs and the right to assert an evidentiary privilege with respect to the documents produced under La. Rev. Stat. § 6:333.

The magistrate judge denied Regions's motion applying BancorpSouth Bank v. Kleinpeter Trace, L.L.C., 155 So.3d 614, 630 (La. Ct. App. 2014), in which the court found that La. Rev. Stat. § 6:333(I)(2) "does not apply to a customer's request for financial records that pertain to the customer's account or loan."  The magistrate judge found that BankcorpSouth indicated that the cost-shifting provisions of  La. Rev. Stat. § 6:333(G) are not applicable when a customer seeks its own records because the court stated that:

> Louisiana Revised Statute 6:333 contains no prohibition that limits or otherwise prevents a customer from obtaining financial records that pertain to his own account or loan.  To the contrary, LSA-R.S.

---

[3] La. Rev. Stat. § 6:333(I)(2) provides:

Notwithstanding any law to the contrary, all financial records prepared by or for the bank in connection with the bank's evaluation, analysis, or review of any loan or other extension of credit or of any collateral security therefor or reserve therefor shall be confidential and shall not be discoverable or admissible in evidence in any civil action pertaining to or arising out of any such loan, other extension of credit, or the collateral security therefor.

6:333(F)(9) expressly provides that "nothing in [the statute] shall prohibit, restrict, or otherwise apply to" such a disclosure.

Doc. #77.  The magistrate judge also declined Regions's invitation to find that BancorpSouth was wrongly decided.  Regions argued that the federal district court should review the decision of a Louisiana intermediate court of appeal when the Supreme Court of Louisiana has not addressed the issue.  The magistrate judge found that the opinion offered in BancorpSouth by five judges of the Louisiana Court of Appeal, First Circuit, and the denial of writs by the Supreme Court of Louisiana, was sufficient guidance on the interpretation of La. Rev. Stat. § 6:333.

Further, Regions argued that a bill pending in the Louisiana Legislature, H.B. 500, 2016 Reg. Leg. Session (La. 2016), if enacted as proposed, would make it clear that the privilege stated in La. Rev. Stat. § 6:333(I)(2) applies to customers, as well as non-customers, and would be retroactive.[4] The magistrate judge declined to "consider that the Louisiana Legislature may or may not do." Doc. #77.

Regions appealed the magistrate judge's order to this court arguing that the magistrate judge "misconstrued the [BancorpSouth] decision, which was only discussing La. R.S. 6:333(I)(2), which solely deals with privilege, when she applied the rationale of that decision to La. R.S. 6:333(G), which deals with the cost-shifting for responses to discovery."  Regions also argued that the

_____

[4] H.B. 500 would repeal La. Rev. Stat. § 6:333(I)(2) in its entirety and "is intended to be remedial and curative to clarify the intended meaning of" La. Rev. Stat. § 6:333(I).  The proposed law states that "documents and records prepared by or for a financial institution . . . in connection with its evaluation, analysis, or review of any loan, extension of credit, collateral security therefore, or reserve therefore shall be subject to a privilege in favor of the financial institution and shall not be subject to discovery by a customer of the financial institution or any other person." http://www.legis.la.gov/legis/BillInfo.aspx?s=16RS&b=HB500&sbi=y .

5

magistrate judge should have found that <u>BancorpSouth</u> was wrongly decided and she should have considered H.B. 500.  Ursulines argues that the magistrate judge's ruling was correct.[5]

## ANALYSIS

### I.      Standard of Review

"The Federal Magistrates Act grants district courts authority to assign magistrates certain described functions as well as such additional duties as are not inconsistent with the Constitution and laws of the United States." <u>Peretz v. United States</u>, 111 S.Ct. 2661, 2663 (1991) (internal quotation and footnote citation omitted).  Pursuant to 28 U.S.C. § 636(b)(1)(A), a district judge may designate a magistrate judge to hear any pretrial matter pending before the court, with a few exceptions.  The district judge reviews the magistrate judge's orders on nondispositive pretrial matters assigned under subparagraph (A) on a clearly erroneous or contrary to law standard. 28 U.S.C. § 636(b)(1)(A); <u>see</u> <u>Perales v. Sasilla</u>, 950 F.2d 1066, 1070 (5th Cir. 1992). This highly deferential standard requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." <u>United States v. Unites States Gypsum Co.</u>, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

### II.     Applying <u>BancorpSouth</u> to La. Rev. Stat. § 6:333(G)

Regions argues that the magistrate judge erred in finding that the holding of <u>BancorpSouth</u> applies to the cost-shifting provision of La. Rev. Stat. § 6:333(G), because the case did not

---

[5] Ursualines also argued that it would be premature for this court to rule on the appeal because the magistrate judge was still considering issues relevant to the discovery motions.  The magistrate judge has issued rulings resolving those issues. Docs. # 90 & 105.

specifically address that section of the statute.  Rather, Regions argues that the court's ruling is applicable only to La. Rev. Stat. § 6:333(I)(2).

The question presented in BancorpSouth was whether the district court erred in denying BancorpSouth's motion for a protective order and granting the plaintiffs' motion to compel ordering the bank to produce all documents previously withheld by BancorpSouth, which asserted that the documents were privileged under La. Rev. Stat. § 6:333(I)(2).  BancorpSouth, 155 So.3d at 630. The appellate court affirmed the district court's ruling finding that La. Rev. Stat. § 6:333(I)(2) does not apply to a customer's request for financial records that pertain to the customer's own account or loan. Id.  In reaching this decision, the appellate court noted that the statute must be construed in its entirety, and examined many provisions of the statute. Id. at 629.  The court stated that:

> Construing LSA–R.S. 6:333 in its entirety, we find that the statute creates a duty of confidentiality in favor of a bank's customers and protects the bank from liability when the statutory safeguards are followed, and implicitly withdraws such protection when the prescribed procedures are not followed. Louisiana Revised Statute 6:333 contains no prohibition that limits or otherwise prevents a customer from obtaining financial records that pertain to his own account or loan. To the contrary, LSA–R.S. 6:333(F)(9) expressly provides that "nothing in [the statute] shall prohibit, restrict, or otherwise apply to" such a disclosure.

Id. at 629-30 (internal citations omitted).

The magistrate judge cited this language in finding that the cost-shifting provision of La. Rev. Stat. § 6:333(G) does not apply when a customer requests his own records from the bank. Because the court in BancorpSouth stated that La. Rev. Stat. § 6:333 does not place any limits on a customer's obtaining its own records from a bank, the magistrate judge's ruling was not clearly erroneous or contrary to law.

**III.    Whether <u>BancorpSouth</u> Was Wrongly Decided**

Regions argues that the magistrate judge erred in declining to find that <u>BancorpSouth</u> was wrongly decided, and explains why it thinks the decision was incorrect.  Regions argues that the magistrate judge should not have relied on the case because it was not issued by the Supreme Court of Louisiana.

A federal district court applying Louisiana law looks first to the final decisions of the Supreme Court of Louisiana to determine the law on the issue. <u>Howe ex. rel Howe v. Scottsdale Ins. Co.</u>, 204 F.3d 624, 627 (5th Cir. 2000).  If the Supreme Court of Louisiana has not ruled on the issue, then the court must make an "Erie guess" and "determine as best it can" what the Supreme Court of Louisiana would decide. <u>Id.</u>  To do so, this court may look to the decisions of the Louisiana intermediate courts of appeal for guidance. <u>Id.</u>  "Intermediate appellate courts of Louisiana are a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." <u>Id.</u> (quotations and citations omitted).  The federal court's role is to predict, not create or modify state law. <u>Id.</u> at 628.  Thus, the precedent provided by the intermediate appellate courts of Louisiana cannot be disregarded when the appellant does not offer anything to suggest why the Supreme Court of Louisiana would decide the case differently. <u>Id.</u>

Regions explains why it thinks <u>BancorpSouth</u> was wrongly decided, and urged the magistrate judge and this court to go against the precedent of the Louisiana Court of Appeal, First Circuit. Regions does not explain why the Supreme Court of Louisiana would decide the case differently with respect to La. Rev. Stat. § 6:333(I)(2) or (G).  Indeed, the Supreme Court of Louisiana denied writs in the <u>BancorpSouth</u> case.  This court is bound to consider the precedent of the intermediate

8

appellate courts of Louisiana when there is no precedent on point from the Supreme Court of Louisiana.  Thus, the magistrate judge did not err in declining to find that <u>BancorpSouth</u> was wrongly decided.

## IV.    House Bill 500

Regions argues that the magistrate judge should have considered the potential effect of H.B. 500 if it were to be enacted into law.  The Louisiana Legislature's 2016 Regular Session closed on June 6, 2016.  H.B. 500 remained pending in the House Civil Law and Procedure Committee. http://www.legis.la.gov/legis/BillInfo.aspx?s=16RS&b=HB500&sbi=y.   Because the bill has not been enacted into law, the magistrate judge's declining to consider it in making her ruling was not clearly erroneous or contrary to law.

**CONCLUSION**

The United States Magistrate Judge's April 28, 2016, Order denying Regions Bank's motion to assess costs for complying with discovery requests under La. Rev. Stat. § 6:333(G) and preserve its right to assert an evidentiary privilege under La. Rev. Stat. § 6:333(I)(2) (Doc. #77) is **AFFIRMED.**


New Orleans, Louisiana, this  <u>12th</u>  day of July, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**