UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **URSULINES, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-2500** |
| **REGIONS BANK AND ABC INSURANCE COMPANY** | **SECTION: "S" (1)** |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that Ursulines, L.L.C.'s Motion to Continue and Resent Trial and to Reset Case Deadlines (Doc. #109) is **DENIED**.

**IT IS FURTHER ORDERED** that Ursulines, L.L.C.'s Motion to Reset Hearing and Request for Oral Argument Regarding Regions Bank's Motion for Summary Judgment (Doc. #118) is **DENIED**.

**IT IS HEREBY ORDERED** that Regions Bank's Renewed Motion for Summary Judgment (Doc. #99) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendant, Regions Bank, which argues that plaintiff, Ursulines, L.L.C., has not stated a cognizable claim against it. Also before the court is a motion to continue filed by Ursulines, which the court construes in part as a motion for further discovery under Rule 56(d) of the Federal Rules of Civil Procedure.

In 2005, Ursulines sought to purchase vacant land in the Tremé neighborhood of New Orleans, Louisiana for the purpose of developing a condominium complex. On July 8, 2005, Regions' predecessor in interest, AmSouth Bank, wrote to Cesar Burgos, Ursulines' representative, discussing the possibility of AmSouth's providing a construction loan to Ursulines for the project, and outlining the potential terms and conditions of any such loan. That correspondence stated that

Case 2:14-cv-02500-MVL-SS   Document 124   Filed 07/22/16   Page 2 of 19

it was "for discussion purposes only" and that "[t]his letter is not to be construed as a commitment to lend, but as an expression of [AmSouth's] interest in providing the financing outlined above." One of the terms of the proposal for the construction loan was the pre-sale of five of the condominium units.

On July 13, 2005, AmSouth issued a commitment letter to Burgos with respect to a loan for purchasing the vacant land. AmSouth agreed to lend Ursulines $1,050,000 or 80% of the acceptable appraised value of the land, or 75% of the contract price for the purchase of the land. The commitment letter did not include any discussion of the construction loan that was proposed in the July 8, 2005, communication.

On August 12, 2005, a certified appraiser valued the property at $1,400,000. On August 15, 2005, Ursulines purchased the property for $1,400,000, and executed a loan agreement and a promissory note in favor of AmSouth in the principal amount of $1,050,000. Interest on the note was payable monthly, and the loan was due and payable, in full, by February 15, 2006. Ursulines executed a multiple indebtedness mortgage and an assignment of rents and leases in favor of AmSouth to secure the promissory note. The parties also entered into a Business Loan Agreement that governed the loan.

In February 2006, a certified appraiser reconfirmed that the value of the land was $1,400,000, and found that the value of the proposed improvements had a prospective market value of $7,600,000.

Ursulines did not pay the loan in full when it came due on February 15, 2006. Instead, Ursulines executed a new promissory note in favor of AmSouth dated February 15, 2006, in the

principal amount of $1,050,000. This note was payable, in full, by June 15, 2006, with interest payable monthly.

Ursulines did not pay the loan in full when it came due on June 15, 2006. Instead, Ursulines executed a new promissory note in favor of AmSouth dated June 15, 2006, in the principal amount of $1,050,000. This note was payable, in full, by October 15, 2007, with interest payable monthly. The parties also executed the second amendment to the loan agreement.

On November 4, 2006, AmSouth merged with Regions. As the surviving entity, Regions became the owner of the promissory note. Ursulines explored obtaining a construction loan for the condominium project from Regions. On September 24, 2007, Karen Tipton of Regions sent an email to Burgos regarding Ursulines's proposed construction loan. The email outlined "some general lending parameters under which [Regions] would consider [Ursulines's] request[,]" which included a "[n]et presale requirement to cover 100% of the loan dollars prior to closing."

Ursulines did not pay the loan in full when it came due on October 15, 2007. Instead, Ursulines executed a new promissory note in favor of Regions dated October 15, 2007, in the principal amount of $1,050,000. This note was payable, in full, by January 15, 2008, with interest payable monthly. The parties also executed the third amendment to the loan agreement.

On January 15, 2008, Ursulines did not pay the note in full. Instead, Ursulines and Regions entered into a letter agreement that extended the maturity date to March 15, 2008. The principal balance remained $1,050,000. The letter agreement also provided that, by executing the letter,

> [Ursulines] further covenants, represents and warrants that, as of the date [Ursulines] executes this letter, [Ursulines] has no defenses, setoffs, rights of recoupment, counterclaims or claims of any nature whatsoever in respect of the Loan (including, but not limited to, claims arising from fraud, misrepresentation, breach of contact, breach of commitment, impairment of collateral or waiver of any

3

> terms or provisions of any documents executed or delivered in connection with the Loan), [Ursulines] hereby releasing any such defenses, claims, *etc.*

The letter agreement further states that all terms of any documents evidencing the loan remained in effect, unless they were modified therein, and that the letter agreement does not constitute an obligation on Regions's "part to renew or refinance the Loan, or to further extend the maturity date, upon the New Maturity." Regions reserved all "rights and remedies under any and all of the Loan documents with respect to any existing or future default. . . ".

Ursulines did not pay the loan in full when it came due on March 15, 2008. On March 25, 2008, Ursulines executed a new promissory note in favor of Regions in the principal amount of $1,050,000. This note stated that "[if] not sooner paid, [Ursulines] will pay the principal amount of this Note, together with any unpaid interest, in full on 05-15-2008.". The parties also executed the fourth amendment to the loan agreement.

Ursulines did not pay the loan in full when it came due on May 15, 2008. On June 25, 2008, Ursulines and Regions executed a new promissory note which contained the following payment terms:

> . . . [Ursulines] will pay this loan in 2 regular payments of $5,833.33 each and one irregular last payment estimated at $1,051,952.46. [Ursulines's] first payment is due July 25, 2008, and all subsequent payments are due on the same day of each month after that. [Ursulines's] final payment due on September 25, 2008, may be greater if [Ursulines] does not make payments as scheduled.

On September 25, 2008, Ursulines did not pay the note in full and did not execute a new note or extension of the maturity date.

In November 2008, Regions had the property appraised by the same appraiser who performed the 2005 appraisal for AmSouth. This time, the appraiser found that the land was valued at $575,000. In January 2009, Regions placed the loan in its Special Assets Department.

On September 25, 2009, Ursulines executed a new note in favor of Regions. The principal balance of the note was $1,018,084.87. The payment terms of the note stated:

> [Ursulines] will pay the principal of and interest due on this Note in 3 consecutive monthly installments of principal and interest in the amount of $5,833.33 each. The first monthly installment will be due on 10-25-2009, and the remaining installments will be due on the same day of every month thereafter until this Note has been paid in full . . . If not sooner paid, [Ursulines] will pay the principal amount of this Note, together with any unpaid interest, in full on 12-25-2009.

Ursulines did not pay the note in full on December 25, 2009, but continued to make interest payments. On March 26, 2010, Ursulines paid $730,000.00 as partial payment on the note. It paid the balance of $265,650.80 on May 19, 2010. Regions then cancelled the mortgage and assignment or rents and leases.

On November 13, 2012, Ursulines filed suit against Regions in the Civil District Court for the Parish of Orleans, State of Louisiana. Regions removed the matter to the United States District Court for the Eastern District of Louisiana and it was assigned Civil Action No. 12-2974.

In that suit, Ursulines alleged that Regions damaged it by failing to offer Ursulines a construction loan that conformed to the terms proposed by AmSouth in the July 8, 2005, letter to Burgos discussing the potential terms and conditions of a construction loan. Specifically, Ursulines alleged that:

> Thereafter, on August 15, 2005, AmSouth approved a commercial development loan in the amount of four million and eight hundred thousand dollars ($4,800,000.00). Of this loan, one million and four hundred thousand dollars ($1,400,000.00) would become available

5

> immediately for the purchase of the land property. The remaining funds, three million and four hundred thousand ($3,400,000.00), for the construction of the condominium complex, would be available as a line of credit and required that five (5) units be presold prior to commencing disbursement of the funds.

Ursulines alleged that, as a result of Regions's failure to lend, it was forced to abandon the condominium project and lost profits and pre-paid out-of-pocket expenses. Ursulines contended that Regions was liable to it under the theories of breach of contract, fraud, detrimental reliance and unjust enrichment.

In Civil Action No. 12-2974, Regions filed a motion to dismiss, or alternatively, motion for summary judgment, arguing that Ursulines could not maintain a cause of action against it for failure to lend money to Ursulines for the condominium construction project because there was never a credit agreement that met the requirements of Louisiana law. In support of its motion, Regions attached the affidavit of its Assistant Vice President, John W. "Casey" Thornton, Jr. Thornton attested that he maintains the pertinent records at the bank, and there was no credit agreement for the construction loan, only the July 8, 2005, proposal that specifically states that it is not a commitment to lend.

Ursulines argued that its claims were not entirely about the proposed construction loan, but rather that Regions induced Ursulines to enter into the loan to purchase the property, and its detrimental reliance on Regions' representations regarding the construction loan. Ursulines also argued that whether Regions acted fraudulently during the parties' business relationship is a question of fact that could not be determined on summary judgment.

This court granted Regions's motion, finding that Ursulines could not maintain an action against Regions under Louisiana law regarding Regions's alleged oral agreement to enter into the

construction loan with Ursulines. Specifically, the court applied the Louisiana Credit Agreement Statute, which provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets the relevant terms and conditions, and is signed by the creditor and the debtor," and held that the lack of a writing was dispositive. La. Rev. Stat. § 6:1122. As a result, this court dismissed with prejudice, Ursulines' complaint in Civil Action No. 12-2974 against Regions regarding Regions's alleged oral agreement to enter into the construction loan to Ursulines.

On October 30, 2014, Ursulines filed the current lawsuit, Civil Action No. 14-2500. This time, Ursulines claims that Regions is liable to it because Regions acted in bad faith with respect to the administration of the August 15, 2005, land loan agreement and promissory note and all of the renewals thereof. Ursulines alleges that it timely made all payments on the loan and reduced the principal balance while Regions held it. Ursulines claims that it invested over $1,094,730 toward the project, and Regions's new requirement of 100% presale of condominiums to obtain the construction loan rendered impossible the condominium construction project.

Ursulines alleges that in August 2009, it learned that the loan was placed in Regions' "'Special Assets' division, typically reserved for non-payment loan accounts," and was informed that Regions "wished for Ursulines to either move the loan or 'right-size' the loan." Ursulines also alleges that it discovered that Region had conducted the November 2008 appraisal, and claims that the appraised value of $575,000 was incorrect because the property did not flood during Hurricane Katrina or Hurricane Rita and was adjacent to the French Quarter, and that Regions would not provide Ursulines with a copy of the appraisal.

Ursulines alleges that Regions then became "unyielding in its refusal to extend the maturity date of the loan beyond September 25, 2009," and Ursulines "was thus forced to seek assistance from another lending institution before discharging the loan, and also incur additional refinancing costs." Ursulines alleges that it:

> was forced to abandon the condominium construction project and due to Regions['s] ardent pursuit of defaulting Ursulines on the property[,] on May 18, 2010[,] had to sacrifice the project and the valuation of the construction, even recognized by Regions, and sell the Property to a third party purchaser for one million two-hundred and fourteen thousand dollars ($1,214,000.00) at a great loss to Ursulines, between interest payments, principal payments, architecture fees, and loss of business opportunity in excess of three million eight hundred thousand dollars ($3,800,000.00).

Ursulines alleges that Regions is liable for breach of contract, bad faith, error, detrimental reliance, unjust enrichment, loss of business opportunity and unfair trade practices due to its actions regarding the parties' business relationship stemming from the August 15, 2005, loan agreement and promissory note and all of the renewals thereof.

Regions filed a motion for summary judgment arguing that this court's dismissal of Ursulines' prior suit bars this action under the doctrine of *res judicata*. Ursulines argued that its first lawsuit against Regions, Civil Action No. 12-2974, concerned only the alleged oral contract between Regions and Ursulines regarding the alleged construction loan, whereas this suit, Civil Action No. 14-2500, concerns only Regions's actions regarding the administration of the August 15, 2005, loan agreement and promissory note and all of renewals thereof. This court denied the motion finding that the central claim of Civil Action No. 12-2974 was that Regions harmed Ursulines by failing to offer Ursulines a construction loan the conformed to the terms proposed by AmSouth in July 2005, whereas the central claim of Civil Action No. 14-2500 is that Regions acted in bad faith in

administering the August 15, 2005, loan agreement and promissory note and all of the renewals thereof. The court found that the holding of its May 21, 2013, Order and Reasons dismissing Civil Action No. 12-2974, which dismissed Ursulines's claims regarding the proposed construction loan under the Louisiana Credit Agreement Statute because there was no writing, was not applicable to Ursulines's claims regarding Regions's administration of the land loan agreement and promissory notes which were in writing.

Regions moved for reconsideration, which was denied. Regions also moved for partial summary judgment or a finding under Rule 56(g) of the Federal Rules of Civil Procedure that some of Ursulines's claims are precluded under the doctrine of *res judicata* because they relate to the alleged oral agreement regarding the construction loan, and summary judgment on the remaining claims. The court denied the motion finding that it would be premature to issue summary judgment or find which facts are undisputed as to any of Ursulines's claims because no discovery had been conducted. The court stated that Regions may re-file the motion after discovery had been conducted.

The discovery deadline in this matter has passed, and Regions has provided written discovery responses and documents to Ursulines. Regions filed a renewed motion for summary judgment arguing that Ursulines has not stated a cognizable claim for relief. Ursulines argues that the court cannot grant the motion because Ursulines has not taken any depositions of potential witnesses identified by Regions.

## ANALYSIS

**I.  Rule 56(d) of the Federal Rules of Civil Procedure**

In its motion to continue and its opposition to Regions's motion for summary judgment, Ursulines argues that more discovery is necessary for it to adequately oppose Regions's motion for summary judgment. The court construes these documents as a motion for relief under Rule 56(d) of the Federal Rules of Civil Procedure.

Rule 56(d), formerly Rule 56(f), provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Because Rule 56(d) is "designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose,'" motions for discovery made under this rule are "'broadly favored and should be liberally granted.'" Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (quoting Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006)). "Technical, rigid scrutiny of a [Rule 56(d)] motion is inappropriate." Union City Barge Line v. Union Carbide Corp., 823 F.2d 129, 136 (5th Cir. 1984). Although Rule 56(d) states that a nonmovant must file an affidavit or declaration supporting the requested continuance, "so long as the nonmoving party indicates to the court by some equivalent statement, preferable in writing of its need for additional discovery, the nonmoving party is deemed to have invoked the rule." Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1266-67 (5th Cir. 1991) (quotations and citations omitted).

Ursulines did not file an affidavit or declaration supporting its motion for a continuance of the trial or its memorandum in opposition to Regions's motion for summary judgment. However, Ursulines states in the body of its opposition memorandum the discovery it seeks. Thus, Ursulines is deemed to have invoked Rule 56(d).

To obtain relief under Rule 56(d), the party opposing the summary judgment, "may not simply rely on vague assertions that additional discovery will produced needed, but unspecified facts." SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980). Instead, the Rule 56(d) motion must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" Raby, 600 F.3d at 561 (quoting C.B. Trucking, Inc. v. Waste Mgmt. Inc., 137 F.3d 41, 44 (1st Cir. 1998)). Further, a Rule 56(d) motion may be denied if a party had the opportunity to conduct discovery but did not diligently pursue it. Int'l Shortstop, 939 F.2d at 1267.

Ursulines states that it needs to take depositions of potential witnesses identified in Regions's discovery responses. Ursulines argues that the depositions will yield facts relevant to its claim that Regions acted in bad faith with respect to its practice of renewing the loan multiple times, then eventually placing the loan into its Special Assets Department and refusing to issue another extension of the maturity date. As discussed herein, Regions has demonstrated in its motion for summary judgment that Ursulines has not stated a cognizable cause of action against it. Therefore, further discovery is unnecessary, and Ursulines's motion to continue, which is construed in part, as a motion under Rule 56(d) is DENIED.

**II.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**III.  Regions's Motion for Summary Judgment**

Regions argues that it is entitled to summary judgment on each of Ursulines's claims.

## A. Breach of Contract

In paragraph 31 of the complaint, Ursulines alleges that Regions is "liable for damages occasioned unto Ursulines for [its] breach of contract for failing to act in good faith in rendering its obligations under the construction loan contract." As this court found in Civil Action No. 12-2974, Ursulines cannot maintain any cause of action predicated on the proposed construction loan contract because it was not in writing and the Louisiana Credit Agreement Statute provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets the relevant terms and conditions, and is signed by the creditor and the debtor," La. Rev. Stat. § 6:1122.  There was no such writing memorializing the proposed construction loan. Therefore, Regions's motion for summary judgment is GRANTED as to Ursulines's breach of contract claim, and that claim is DISMISSED WITH PREJUDICE.

## B. Bad Faith

Ursulines alleges that Regions acted in bad faith by failing to disclose:

> a) that the Property was substantially less valuable than divulged to the Ursulines before Ursulines entered into the one million four hundred thousand dollars ($1,400,000.00) loan obligation, and/or
>
> b) the valuation, and reliability thereof, of the Property conducted by Defendants in November 2008, and/or
>
> c) That it did not intend to proceed with the loan terms and instead induced Ursulines into thinking that timely payment of the Loan would keep the loan current, and,
>
> d) other such misrepresentations in order to obtain an unjust advantage for Defendants in negotiations with Ursulines and cause Ursulines loss and inconvenience.

In its opposition to the motion for summary judgment, Ursulines states that its bad faith claim relates to Regions's "pattern of practice and actions related to the forced discharge of the loan,

13

*while Regions' continued to extend the maturity date of the loan and/or provide Ursulines' with new promissory notes.*"  Ursulines further states that its

> general proposition, thus, is that all promissory notes or other lending agreements entered into with Regions' from the date Regions' made the apparent internal or corporate determination to dislodge the Ursulines' loan, via placement in Special Assets, were breached by Regions', either in whole or in part, at the outset by Regions' untrue representations that it was dealing in good faith.

Essentially, Ursulines is arguing that the November 2008 appraisal was erroneous and Regions improperly relied on it in refusing to extend the maturity date of the note beyond December 25, 2009, which eventually forced Regions to sell the property to payoff the note.  Ursulines characterizes this as a failure of Regions to act in good faith in negotiating an extension of the loan.

As Regions points out in its motion for summary judgment, there is no contractual provision that required Regions to extend the maturity date of the note.  The sequence of events regarding the multiple extensions of the maturity dates of the promissory notes demonstrates that Ursulines does not have a claim for bad faith against Regions.  When the November 2008 appraisal was conducted, Ursulines was in default of the sixth promissory note, executed on June 25, 2008, which required that the principal balance and all outstanding interest be paid in full by September 25, 2008.  The loan was placed in the Special Assets Division in January 2009, when Ursulines had been in default for at least three months.  On September 25, 2009, although Ursulines had been in default of the promissory note for almost a year, Regions allowed Ursulines to execute the seventh promissory note extending the maturity date to December 25, 2009.  Ursulines claims that Regions acted in bad faith by relying on the November 2008 appraisal in not extending the maturity date of the loan for a ninth time after it came due on December 25, 2009.  However, Regions did extend the maturity date of the note from September 25, 2008, to December 25, 2009, after receiving the November

14

2008 appraisal and after Ursulines had been in default for almost a year.  Ursulines has not cited any provision of any contract with Regions requiring Regions to extend the maturity date of the promissory note, and has not shown any bad faith on Regions's part.  Regions demanded payment when the note was due, as was its right under the contract.  Therefore, Regions's motion for summary judgment is GRANTED as to Ursulines's bad faith claim, and that claim is DISMISSED WITH PREJUDICE.

### C.  Error

In paragraph 35 of the complaint, Ursulines alleges that Regions is liable for damages Ursulines incurred because Regions misrepresented to Ursulines the value of the property, and Regions "knew that the value of the property was a material concern to Ursulines in [its] entry into the loan agreement." Ursulines has not presented any evidence that Regions misrepresented the value of the property at the time Ursulines purchased it.  Indeed, the appraisal conducted contemporaneously with the sale stated that the value of the property was $1,400,000, which is what Ursulines paid for it.  Therefore, Regions's motion for summary judgment as to Ursulines's error claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE.

### D.  Detrimental Reliance

Ursulines alleges that it detrimentally relied upon Region's representations concerning the anticipated terms of the construction line of credit, that Regions would enter into a loan agreement with Ursulines for the condominium construction project and that Regions intended to lend funds to Ursulines for the construction of a condominium complex as contemplated in the loan application and negotiation.

The doctrine of detrimental reliance is provided in Louisiana Civil Code article 1967, which states:

> Cause is the reason why a party obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

There are three elements required for the application of the doctrine of detrimental reliance: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance. Morris v. Friedman, 663 So.2d 19, 25 (La. 1995). Reliance on an alleged promise is unreasonable when the parties anticipate entering into a written agreement and negotiate the terms of a written agreement that were not mutually agreeable. Rogers v. Brooks, 122 Fed. Appx. 729, 732 (5th Cir. 2004).

Ursulines cannot prevail on its detrimental reliance claims which relate to the proposed construction loan. It is clear that Ursulines's alleged reliance was unjustified because a written credit agreement was contemplated and the parties continued to negotiate terms of the proposed construction loan, as demonstrated by Tipton's September 24, 2007, email to Burgos outlining "some general lending parameters under which [Regions] would consider [Ursulines's] request[,]" which included a "[n]et presale requirement to cover 100% of the loan dollars prior to closing." There is no evidence that Regions firmly committed to lend the money. Further, the Louisiana Credit Agreement Statute provides that "[a] debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets the relevant terms and conditions, and is signed by the creditor and the debtor," La. Rev. Stat. § 6:1122. Thus, Ursulines cannot maintain

a detrimental reliance cause of action based on an alleged oral credit agreement. Regions's motion for summary judgment is GRANTED as to Ursulines's detrimental reliance claims, and those claims are DISMISSED WITH PREJUDICE.

### E. Unjust Enrichment

Ursulines alleges that Regions was unjustly enriched for receiving "loan payments made by Ursulines in good faith reliance of [Regions] intent to provide Ursulines loan funds for construction of a condominium complex under the terms of the original agreement, as well as all proceeds realized by [Regions] through use of Ursulines' funds."

Louisiana Civil Code article 2298, codifies the Louisiana doctrine of unjust enrichment:

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The elements of an unjust enrichment claim are: (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff. Baker v. Maclay Prop. Co., 648 So. 2d 888, 897 (La. 1995). "[O]nly the unjust enrichment for which there is no justification in law or contract allows equity a role in the adjudication." Carriere v. Bank of La., 702 So.2d 648, 671-72 (La. 1996) (quoting Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116, 122 (La. 1974)). Article 2298 specifies that unjust enrichment is "subsidiary in nature," and the "remedy is only applicable to fill a gap in the law where no express remedy is provided." Walters

v. MedSouth Record Mgmt. LLC, 38 So.3d 243, 244 (La. 2010) (quotation omitted). "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." Id.

Ursulines cannot prevail on its unjust enrichment claim because Regions's enrichment stems from valid juridical acts, namely the series of promissory notes. These contracts are the "cause" for which Regions received the loan payments. Therefore, Regions's motion for summary judgment is GRANTED, at to Ursulines's unjust enrichment claim and that claim is DISMISSED WITH PREJUDICE.

### F.  Loss of Business Opportunity

Ursulines alleges that Regions is liable for "Ursulines loss of business opportunity related to the development project to which the loan was centered." Ursulines claims that Regions caused it to lose the opportunity to develop the condominium project by requiring Ursulines to repay the final promissory note when it came due, which required Ursulines to sell the property. Regions demanded payment when the note was due, as was its right under the contract. Ursulines also claims that Regions caused it to lose the business opportunity by failing to provide the alleged oral construction loan. Regions had no obligation to enter into the construction loan. Therefore, Regions's motion for summary judgment is GRANTED at to Ursulines's loss of business opportunity claim, and that claim is DISMISSED WITH PREJUDICE.

### G.  Unfair Trade Practices

Ursulines alleges that Regions violated the Louisiana Unfair Trade Practices Act, ("LUTPA"), La. Rev. Stat. § 51:1401, *et seq.*, in connection with the 2008 appraisal that Ursulines alleges was "erroneous and fictitious" and used by Regions to cancel Ursulines's loan. La. Rev. Stat.

§ 51:1406 provides that LUTPA does not apply to "[a]ny federally insured financial institution . . ." Regions is a federally insured financial institution. Therefore, Ursulines cannot maintain a LUTPA claim against Regions. Regions's motion for summary judgment is GRANTED as to Ursulines's LUTPA claim, and that claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

**IT IS HEREBY ORDERED** that Ursulines, L.L.C.'s Motion to Continue and Resent Trial and to Reset Case Deadlines (Doc. #109) is **DENIED**.

**IT IS FURTHER ORDERED** that Ursulines, L.L.C.'s Motion to Reset Hearing and Request for Oral Argument Regarding Regions Bank's Motion for Summary Judgment (Doc. #118) is **DENIED**.

**IT IS HEREBY ORDERED** that Regions Bank's Renewed Motion for Summary Judgment (Doc. #99) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this   22nd   day of July, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**